ams

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,           )
                                    )
                    Plaintiff,      )
                                    )
v.                                  )          Case No. 09-40043-JAR
                                    )
BRYCE EBERT,                        )
                                    )
                    Defendant.      )
_____)

## MEMORANDUM AND ORDER

   This matter comes before the Court on the following pretrial evidentiary motions filed by

defendant Bryce Ebert: Motion to Suppress Evidence Seized from Mr. Ebert on June 28, 2007

(Doc. 24) and Motion to Suppress Evidence Seized on April 15, 2009 (Doc. 23).  The Court

conducted an evidentiary hearing on September 2, 2009 and took these motions under

advisement at that time.  The Court has considered the parties' submissions and the evidence

adduced at the hearing and is prepared to rule.  As described more fully below, defendant's

motions to suppress are denied.

**I.  Motion to Suppress Evidence Seized from Mr. Ebert on June 28, 2007 (Doc. 24)**

   At the evidentiary hearing, Sargent Daryl Ascher of the Riley County Sheriff's Office

testified on behalf of the government about certain events that took place on June 28, 2007.  On

that date, Sargent Ascher was working as an undercover narcotics officer, investigating

defendant.  During this investigation, a confidential informant was utilized to make contact with

defendant and to facilitate a controlled purchase of methamphetamine.  On June 28, 2007, the

confidential informant facilitated a controlled purchase between an undercover officer and

defendant. Defendant provided the undercover officer with approximately one-eighth ounce of methamphetamine in exchange for $270. Sargent Ascher observed defendant driving just after the controlled purchase occurred.

During the course of the investigation, Sargent Ascher had learned that defendant's driver's license was suspended. On June 28, Sargent Ascher verified that defendant's driver's license was still suspended approximately forty-five minutes to one hour before he observed defendant driving. The undercover officer who participated in the controlled purchase of methamphetamine had advised Sargent Ascher that defendant possessed a large amount of methamphetamine at the time of the controlled purchase. The undercover officer also advised Sargent Ascher that defendant was fascinated with weapons and may be carrying one, although the officer did not indicate that she observed defendant carrying a weapon during the controlled purchase. Sargent Ascher requested that the patrol officer ahead of him pull over defendant's vehicle.

After the patrol officer pulled over defendant's vehicle, Sargent Ascher and another detective arrived and pulled their vehicle in front of defendant's vehicle to ensure that it did not move. Once defendant stepped out of the vehicle, Sargent Ascher placed defendant under arrest and searched his person. Sargent Ascher found a small bag in defendant's pocket that contained about one-eighth ounce of methamphetamine. The patrol officer also found the $270 in recorded money used by the undercover officer in the controlled purchase from earlier that day. Sargent Ascher testified that it is Riley County Sheriff's Office policy to pat down an arrestee in every case.

Defendant moves to suppress the evidence seized from his pocket during the pat-down

search following the traffic stop, arguing that there was no evidence upon which the officers

suspected he was armed and dangerous given that he was stopped and arrested for driving with a

suspended license.

    The government contends that this was a valid search incident to arrest.  Defendant was

known to officers not to possess a valid driver's license at the time they observed him driving.

Under K.S.A. § 8-235:

> (a) No person, except those expressly exempted, shall drive any
> motor vehicle upon a highway in this state unless such person has
> a valid driver's license. No person shall receive a driver's license
> unless and until such person surrenders or with the approval of the
> division, lists to the division all valid licenses in such person's
> possession issued to such person by any other jurisdiction. All
> surrendered licenses or the information listed on foreign licenses
> shall be returned by the division to the issuing department,
> together with information that the licensee is now licensed in a
> new jurisdiction. No person shall be permitted to have more than
> one valid license at any time.

> (e) Violation of this section shall constitute a class B
> misdemeanor.

K.S.A. § 22-2401 provides law enforcement with authority to arrest if probable cause exists that

a person is committing a misdemeanor and the officer has probable cause to believe that

evidence will be irretrievably lost if he is not arrested.

    Under the search incident to arrest doctrine, "it is reasonable for the arresting officer to

search the person arrested in order to remove any weapons that the latter might seek to use in

order to resist arrest or effect his escape."[1]  Because the pat-down search of defendant was

conducted after and incident to defendant's arrest, it was an appropriate search incident to arrest.

---

[1]*Chimel v. California*, 395 U.S. 752, 763 (1969).

Defendant contends that officers must have had reasonable suspicion to believe that he was armed and dangerous in order to conduct a pat-down search.  But the cases cited by defendant only pertain to traffic stops that do not involve custodial arrest.  In *Knowles v. Iowa*,[2] the Supreme Court declined to extend the officer safety rationale for the search incident to arrest doctrine to the context of a traffic citation.[3]  The Court explained that the threat to officer safety is less in the context of a traffic citation than a custodial arrest because the latter scenario "involves 'danger to the officer' because of the 'extended exposure which follows the taking of a suspect into custody and transporting him to the police station.'"[4]  Here, the search was incident to a custodial arrest, not to the issuance of a traffic citation.  For the same reason, *United States v. Wald*[5] is inapposite.  Nonetheless, Sargent Ascher had a reasonable and articulable suspicion that defendant was presently armed and dangerous based on the undercover officer's statements to him prior to the arrest that defendant was fascinated with weapons and may be armed.

## II.  Motion to Suppress Evidence Seized on April 15, 2009 (Doc. 23)

At the hearing, Deputy Sheriff Eric Green of the Pottawatomie County Sheriff's Office testified on behalf of the government.  Deputy Green was on patrol duty on April 15, 2009 when he was contacted by Detective Robert Sauerbrunn of the Pottawatomie County Sheriff's Office, who advised him that he believed Bryce Ebert was in Deputy Green's patrol area.  Detective Sauerbrunn advised that Ebert was driving a green Jeep Cherokee that was missing a front

---

[2]525 U.S. 113 (1998).

[3]*Id.* at 117–18.

[4]*Id.* at 117 (quoting *United States v. Robinson* 414 U.S. 218, 234–35 (1973)).

[5]216 F.3d 1222, 1226–27 (10th Cir. 2000).  *United States v. Maddox*, also cited by defendant, concerns whether an officer has reasonable suspicion to justify a temporary detention in the context of serving a warrant on another individual, based on the governmental interest in officer safety.  388 F.3d 1356, 1365 (10th Cir. 2004).

bumper with a 30-day temporary tag.  Ebert was described as a white male with a slender build who was driving on a revoked driver's license, was wanted on a $100 bond, and was known to carry a firearm.  Detective Sauerbrunn advised that Ebert was wanted on outstanding warrants involving firearm charges, possession of methamphetamine, and driving with a suspended or revoked license.

Deputy Green was driving eastbound on Military Trail Road when he observed a green Jeep Cherokee that was missing a front bumper headed westbound on the same road; Deputy Green was still on the phone with Detective Sauerbrunn at the time.  Deputy Green turned his vehicle around and Detective Sauerbrunn advised him to follow the Jeep until other units could help.  Detective Sauerbrunn advised that Ebert was known to carry weapons and was known to flee.

The Jeep came to a stop in front of a residence in St. George, Kansas, and Deputy Green stopped as well.  He stepped out of the patrol vehicle and made contact with the driver, who was walking toward the residence and who Deputy Green identified in court as defendant.  Deputy Green asked if he could speak to defendant; defendant replied "No."  Deputy Green asked his name; defendant did not respond.  Deputy Green continued to ask him his name and eventually defendant stated that his name was Bryce Ebert.  Deputy Green asked defendant if he had a weapon, defendant said that he did and started to reach for his left side with his left hand.  Deputy Green ordered defendant to stop and escorted him to the vehicle for a pat-down search.  Deputy Green found a handgun inside the waistband of defendant's athletic shorts that was covered by his shirt.  The handgun was loaded.

Deputy Green then handcuffed defendant and checked his person for any other weapons,

but did not find any.  Defendant gave his keys to Deputy Green and asked him to give them to his friend who lived in the residence defendant had parked in front of.  After defendant was taken into custody, Deputy Green looked at the Jeep and saw through the driver's side rear window a shotgun on the floorboard.  The Jeep was locked.  After seeing the firearm, officers searched the Jeep.  During the search, officers found shotgun shells and sporting clays, a black leather wallet belonging to defendant, a plastic bag containing a crystalline substance later found to be methamphetamine, cash, and rolling papers.

Detective Sauerbrunn, who arrived shortly after defendant was arrested, decided to tow the Jeep pursuant to the County's inventory policy.  At some point, officers learned that the temporary tag on the Jeep was in fact registered to a 1994 Ford.  Defendant did not have any registration or proof of insurance.  Officers did not know who the Jeep belonged to.

Defendant urges that officers could not search his Jeep as a search incident to arrest because, under *Arizona v. Gant*,[6] officers could not expect to find evidence of the offense of his arrest in the passenger compartment of the vehicle.  In *Gant*, the Supreme Court held that an officer may "justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'"[7] When the occupant is arrested for a traffic violation, there will not be a reasonable basis to believe that the vehicle contains relevant evidence.[8]  But the offense of arrest may in some cases provide a basis for searching the

---

[6]129 S. Ct. 1710, 1719 (2009).

[7]*Id.* (quoting *Thornton*, 541 U.S. 632 (Scalia, J., concurring)).

[8]*Id.*

6

passenger compartment of a the vehicle and its containers.[9]

Here, defendant was not merely arrested for a traffic violation.  He was arrested for outstanding warrants related to felony offenses.  When Deputy Green first took defendant into custody, he located a concealed firearm on his person.  Furthermore, Deputy Green could see a firearm on the floorboard of the vehicle in plain view.  On these facts, the government argues that Deputy Green and others had a reasonable basis to believe that the vehicle contained evidence of the crime of arrest—criminal possession of a firearm.  The Court agrees.

Furthermore, as the government points out, if there is probable cause to believe that the vehicle contains evidence of criminal activity, *United States v. Ross* authorizes the search of any area of the vehicle where it may be found.[10]  Here, the vehicle contained a shotgun in plain view, which is evidence of criminal possession of a firearm because defendant had outstanding felony warrants when he possessed the shotgun and the officers were all aware of those outstanding warrants.  Accordingly, the search was lawful as incident to defendant's arrest and because the officers had probable cause to believe that the Jeep contained evidence of criminal activity.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's Motion to Suppress Evidence Seized from Mr. Ebert on June 28, 2007 (Doc. 24) and Motion to Suppress Evidence Seized on April 15, 2009 (Doc. 23) are **denied**.

**IT IS SO ORDERED.**

Dated:  September 16, 2009

                S/ Julie A. Robinson
               JULIE A. ROBINSON
               UNITED STATES DISTRICT JUDGE

---

[9]*Id.*

[10]*Id.* at 1721 (citing *Ross*, 456 U.S. 798, 820–21 (1982)).